IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| K.A.P., INC., | * | |
| Appellant, | * | |
| v. | * | CV 416-089 |
| | * | (Bankr. Case No. 12-40484) |
| KENNETH R. HARDIGAN, | * | (Advers. Case No. 12-04069) |
| Appellee. | * | |

**O R D E R**

Creditor K.A.P., Inc. ("Appellant") appeals from the Bankruptcy Court's March 28, 2016 Order granting summary judgment against Appellant and in favor of Debtor Dr. Kenneth R. Hardigan ("Appellee") and finding that Appellee's debt to Appellant was dischargeable through Appellee's Chapter 7 Bankruptcy. Because Appellant fails to present sufficient factual evidence to create a genuine dispute as to the disputed element of its claim, this Court **AFFIRMS** the Bankruptcy Court's Order.

## I. BACKGROUND

In 2006, Appellee purchased a home in Savannah, Georgia (the "Property"). (Bankruptcy Record, Doc. 3-2, at R:481.)[1] In September 2007, Appellee hired Appellant, a general contractor engaged in the construction of commercial and residential

---

[1] Further references to the Bankruptcy Record, Doc. 3-2, are cited as "R:____."

buildings, to make substantial renovations to the Property (the "Project"). (R:1147-50, 1503-05.) The parties never memorialized their verbal agreement with a written contract, but agreed that Appellant would perform the renovations at cost and on a "time-and-materials" basis. (R:1503-05.) After receiving bids from subcontractors, Appellant presented Appellee with a "base bid" anticipated Project budget of $1,092,943.00. (R:482, 507-36, 1503-05.) Appellee subsequently borrowed $1,095,000.00 from non-party SunTrust Bank ("SunTrust") to finance the Project (the "First Loan"). (R:483.) During its work on the Project, Appellant would submit periodic invoices to Appellee for payment,[2] which, for the majority of the Project, Appellee timely paid. (R:537-53, 1292, 1294, 1422-98, 1661.)

Over the course of the Project, Appellee requested numerous revisions and upgrades to the Project's original plans, thereby increasing the Project's scope and expense. By October 2008, despite work still remaining to be done, Appellee had exhausted the proceeds from the First Loan. (R:469.) Indeed, he was only able to pay $206,000.00 towards Appellant's October 23, 2008 invoice of $238,866.00. (R:546-48.)

In an effort to secure additional financing, Appellee sought revised estimates from Appellant as to the anticipated cost to finish the Project. (R:1292-93, 1619.) On December 12,

---

[2] These invoices were accompanied by a schedule of value showing, *inter alia*, the amounts previously billed, the work done for that period, the total amount billed, and the balance to finish. (R:467, 537-53, 1422-98.)

2

2008, Appellant provided Appellee with an estimated additional budget of $314,417.00, with which Appellee was able to obtain a commitment for an unsecured loan of $350,000.00 from SunTrust (the "Second Loan"). (R:555-58, 1294, 1340-44, 1619, 1661-62.) Based on assurances from Appellee in late December 2008 or early January 2009 that he would satisfy any arrears and finance the completion of the Project with the funds recently obtained from SunTrust and directions from Appellee to complete the Project, Appellant resumed work on the Project. (R:1296, 1300, 1307-08, 1619-20.) On or about January 21, 2009, Appellee received the proceeds from the Second Loan (*i.e.*, $350,000.00) from SunTrust.[3] (R:1282-84, 1304.) Despite having received these funds, Appellee never made any payments to Appellant to satisfy its arrears from October 2008 or any other subsequent invoices.[4]

On February 26, 2009, Appellant finished the Project. (R:1306, 1608-09.) Appellee took up residence in the Property in mid-March 2009. After Appellee failed to satisfy the amounts outstanding to Appellant, Appellant placed a materialmen's lien on the Property in the amount of $544,109.93 on May 18, 2009. (R:606-08.)

---

[3] The term of this loan was only six months and was set to mature on July 21, 2009. (R: 1282-84, 1662.)

[4] On December 11, 2008, Appellant sent a periodic invoice to Appellee in the amount of $276,761.83, which together with the $32,866.00 in arrears from October 2008, amounted to $309,627.83 then due to Appellant. (See R:547-50.) On February 5, 2009, Appellant sent another periodic invoice to Appellee in the amount of $234,482.00. (R:552-53.) On April 1, 2009, Appellant sent a memorandum entitled "Changes and Extras incurred after the September 7th budget number of 1.2 Million that was given to you," which provided that the total amount of extras incurred totaled $314,417.00 (R:560-63.)

3

On September 24, 2009, Appellant filed suit against Appellee for breach of contract in the Superior Court of Chatham County, Georgia, CAFN: CV-09-2276-AB (the "State Action"). (R:610-15.) On March 7, 2012, Appellee filed for relief under Chapter 7 of the Bankruptcy Code. On October 17, 2012, Appellant initiated the instant adversary proceeding to determine the dischargeability of Appellee's debt (the "Adversary Action"). (R:16-21.) On January 22, 2013, the Bankruptcy Court entered an order in the Adversary Action abstaining from further proceedings pending the resolution of the State Action. (R:364-71.) In September 2013, a jury awarded $400,000.00 in damages in favor of Appellant in the State Action.[5] (R:476.)

On March 3, 2015, the Bankruptcy Court entered an Order granting Appellee's requested Chapter 7 discharge. On September 30, 2015, Appellee moved for summary judgment against Appellant in the Adversary Action. (R:452-65.) On March 28, 2016, the Bankruptcy Court entered summary judgment in favor of Appellee and against Appellant. (R:1667-85.) Appellant subsequently perfected the present appeal.

---

[5] The jury also awarded $112,221.00 in attorney fees to Appellant for Appellee's bad faith, stubborn litigiousness or causing unnecessary trouble and expense. See One Bluff Dr., LLC et al. v. K.A.P., Inc., 330 Ga. App. 45, 45 (2014). The jury's award was subsequently affirmed by the Court of Appeals of Georgia. See id.

4

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rules 8001 et seq. On appeal, the Court reviews the Bankruptcy Court's grant of summary judgment de novo. In re Optical Techs., Inc., 246 F.3d 1332, 1335 (11th Cir. 2001).

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also FED. R. BANKR. P. 7056. The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259, 1260 (11th Cir. 2004); FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

[record before the court] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating that there is indeed a genuine issue as to the material facts of its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Matsushita, 475 U.S. at 587. The Court must also avoid weighing conflicting evidence. Anderson, 477 U.S. at 255; McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Pepper v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989).

6

## III. DISCUSSION

Appellant raises one issue on appeal: whether the Bankruptcy Court erred in awarding summary judgment to Appellee on Appellant's claim that Appellee's debt to Appellant was non-dischargeable through Appellee's Chapter 7 Bankruptcy. Specifically, Appellant challenges the Bankruptcy Court's conclusions that Appellant failed to demonstrate a genuine issue of material fact as to whether Appellee had fraudulent intent at the time he promised to compensate Appellant for overdue invoices and/or completion of the Project.

Excepting debts from discharge is governed by 11 U.S.C. § 523. In re Bilzerian, 100 F.3d 886, 889 (11th Cir. 1996). Section 523(a)(2)(A) provides that "[a] discharge [in bankruptcy] does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). For a debt to be excepted from discharge under Section 523(a)(2)(A), the creditor must show by a preponderance of the evidence that: "(1) the debtor made a false representation with the purpose and intention of deceiving the creditor; (2) the creditor relied on the representation; (3) the creditor's reliance was reasonably founded; and (4) the creditor sustained a loss as a result of

7

the representation." In re Rudolph, 233 F. App'x 885, 887-88 (11th Cir. 2007) (quoting In re Villa, 261 F.3d 1148, 1150 (11th Cir. 2001)). "[C]ourts should narrowly construe exceptions to discharge against the creditor and in favor of the debtor." Bilzerian, 100 F.3d at 891 (citing In re St. Laurent, 991 F.2d 672, 680 (11th Cir. 1993)). Because neither party has alleged error in the Bankruptcy Court's determination that Appellant had satisfied the final three elements of its claim under Section 523(a)(2)(A), the Court need only concern itself with whether Appellant established the first element.

To establish the first element of Section 523(a)(2)(A), the creditor must demonstrate that the debtor created false pretenses or made a false representation, other than an oral statement regarding the debtor's financial condition, with the intent to deceive the creditor.[6] Bilzerian, 100 F.3d at 892. A debtor's statement of his intent to perform an act in the future

---

[6] See In re Wood, 245 F. App'x 916, 918 (11th Cir. 2007) ("The concept of false pretenses is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol, or token calculated and intended to deceive. It is a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor. Silence or concealment as to a material fact can constitute false pretenses." (quoting In re Gilmore, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998))); see also In re Brandon, 297 B.R. 308, 313 (Bankr. S.D. Ga. 2002) ("As distinguished from false representation, which is an express misrepresentation, false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression, and it is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A)." (quotations and citations omitted)).

will not generally constitute a false representation that is actionable under Section 523(a)(2)(A) unless the creditor can establish that the debtor lacked the subject intent to – or knew that he could not – perform the act at the time the statement was made. In re Boggus, 479 B.R. 147, 155 (Bankr. N.D. Ga. 2012) (citations omitted). Thus, on summary judgment, a creditor bears the burden of demonstrating by factual evidence that the promises the debtor breached were actually made with fraudulent intent from the inception of the underlying transaction. Id.; see also Fernandez v. Havana Gardens, LLC, 562 F. App'x 854, 856 (11th Cir. 2014) ("Under Section 523(a)(2)(A), the issue is whether a debtor had fraudulent intent when he *obtained* money or property from a creditor." (emphasis original)). Because a debtor is unlikely to admit to fraudulent intent, however, courts are permitted to infer such intent from the facts and circumstances of the case.[7] In re Bucciarelli, 429 B.R. 372, 375-76 (Bankr. N.D. Ga. 2010) (citations omitted); see also In re Bullock, 317 B.R. 885, 890 n.1 (Bankr. M.D. Ala. 2004) ("A determination of the debtor's fraudulent intent to deceive depends in large measure upon the assessment of the debtor's credibility made by the Court and the

---

[7] "Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. Fraud may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question." Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357, 1375-76 (N.D. Ga. 2011), aff'd sub nom. Rosen v. Am. Guarantee & Liab. Ins. Co., 503 F. App'x 768 (11th Cir. 2013).

9

demeanor of the particular debtor." (citations omitted)); Rosen v. Protective Life Ins. Co., 817 F. Supp. 2d 1357, 1375 (N.D. Ga. 2011), aff'd sub nom. Rosen v. Am. Guarantee & Liab. Ins. Co., 503 F. App'x 768 (11th Cir. 2013) ("Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith." (quotations and citations omitted)). Nevertheless, the subsequent failure of the debtor to pay, without more, is not sufficient to establish that the debtor lacked the intent to pay when the representation was made. Bullock, 317 B.R. at 890.

Here, neither party appears to dispute that Appellee promised to use the proceeds from the Second Loan to satisfy Appellant's outstanding invoices and finance completion of the Project. It is also undisputed that Appellant relied upon that promise when it agreed to continue work on the Project. In the Bankruptcy Court, however, the parties differed in their understandings of what conditions were placed upon Appellee's disbursement of the loan funds to Appellant and on their opinion as to whether Appellee ever truly intended to make good on his promise in the first place. On appeal, Appellant appears to have abandoned its contentions as to undisclosed conditions on disbursement. Instead, Appellant focuses solely on its arguments related to Appellee's alleged fraudulent intent.

Specifically, Appellant contends that the attendant circumstances lead to "a clear inference" that Appellee never intended to actually pay Appellant "at the time he obtained the SunTrust Consumer Loan, notified [Appellant] that funds with which to pay them had been received, and ordered [Appellant] to complete its work [on the Project]." (Doc. 13, at 23.) Appellee, in contrast, argues that Appellant has failed to sustain its burden of showing by a preponderance of the evidence that Appellee did not intend to keep his promise at the time it was made; rather, Appellee claims that he intended to keep his promise but later decided not to pay Appellant based on an alleged billing dispute that arose between the parties.

Based upon a review of the record, the Court concludes that no genuine dispute of fact exists as to whether Appellee intended to defraud Appellant at the time he promised to pay Appellant and requested that work on the project be recommenced. While Appellant has vigorously attacked the validity and timing of the billing dispute alleged by Appellee, it has provided no factual evidence from which Appellee's alleged fraudulent intent at the time of its promise can be found or inferred. See Boggus, 479 B.R. at 155. A review of the timeline of Appellee's conduct and the attendant circumstances upon which Appellant relies, viewed in the light most favorable to Appellant, further demonstrates this absence of evidence:

11

- As of October 2008, the funds from Appellee's First Loan were depleted. (R:469, 546-48.)
- Appellee subsequently requested Appellant to provide him with an estimate of the additional cost to complete the Project so that he could secure additional financing. (R:1292-93, 1619.)
- On December 12, 2008, Appellant provided Appellee with the requested estimate.[8] (R:555-58, 1340-44, 1619, 1661.)
- Appellee then met with SunTrust for the express purpose of obtaining further financing and communicated the existence and purpose of this meeting to Appellant. (R:487, 1294, 1619, 1662.)
- In late December 2008 or early January 2009, Appellee informed Appellant that he had been assured by SunTrust that a loan would be extended to him in the amount of $350,000.00 and that the proceeds from this forthcoming loan would be used to satisfy the amounts due to Appellant and further requested that work on the Project be resumed. (R:1296, 1300, 1307-08, 1619-20.)
- Based on Appellee's assurances, Appellant resumed work on the Project. (R:1296, 1300, 1307-08, 1619-20.)

---

[8] At the time he received Appellant's estimate, Appellee had also received two invoices from Appellant, dated October 23 and December 11, 2008, which informed Appellee that he was indebted to Appellant in the amount of $309,627.83. (R:488-89, 547-48, 550.)

12

- On or about January 21, 2009, Appellee received the proceeds from the Second Loan, which, unbeknownst to Appellant, had a term of only six months. (R:1282-84, 1304.)

- On or about February 5, 2009, a billing dispute allegedly arose from Appellee's receipt of a new invoice from Appellant. (See R:1301 ("Q: Did you have any thought or notion to that effect, that it perhaps was going to lead to further troubles by allowing [Appellant] to continue construction despite the fact that you had a dispute with them?  A: I didn't have a dispute until – the dispute, truthfully, started when I got the February bill in which there was an additional 200-some-thousand dollars with Howard stating, no that's additional to the 300,000. That was in early February.").)

This review highlights the only facts that Appellant has provided to support its position: (1) several weeks elapsed between Appellee's receipt of the proceeds from the Second Loan and the development of the alleged billing dispute; (2) the Second Loan had a term of only six months; and (3) Appellee's alleged billing dispute rested on questionable (but not wholly unsupported) premises. These facts, however, are insufficient to allow a reasonable factfinder to conclude that Appellee had the intent to manufacture a billing dispute (or to otherwise withhold payment) at the time he made his promise. That the

13

Second Loan's term was only six months is not suspicious given that the Second Loan was intended solely to finance the completion of the Project (and thereby maximize the value of the underlying collateral, *i.e.*, the Property) so that Appellee's loans could be consolidated and/or refinanced. (R:1294, 1323-24, 1335, 1347-48, 1351-53.) That Appellee failed to make payment to Appellant during the two-week (or greater) period between receipt of the Second Loan's proceeds and the onset of the billing dispute is also not unusual for a home construction project, particularly in light of the parties' course of dealings, the absence of a written contract, and the scope of the Project and the significant cost overruns associated therewith. Moreover, whether Appellee's billing dispute and the premises upon which it relied were valid is only tangentially related to the Court's present inquiry; the question is not whether Appellee manufactured a billing dispute to avoid payment, but rather whether Appellee had a fraudulent intent at the time he agreed to satisfy any outstanding billings or other amounts due to Appellant and ordered work to be resumed. Appellant has failed to provide any evidence from which such an original fraudulent intent can be found or inferred. In sum, Appellant has failed to make a showing that Appellee's relevant conduct was unusual, suspicious, or inconsistent with what would be expected from a contracting party who was acting in good

faith.  See Rosen, 817 F. Supp. 2d at 1375-76.  Accordingly, Appellee is entitled to summary judgment on Appellant's claims.

## IV. CONCLUSION

The parties entered into an agreement for substantial renovations to a stately residence without a written contract. The scope of this endeavor outpaced the parties' original estimations to such a degree that further financing was necessary to complete renovations.  After Appellee asked for and obtained an estimate of the cost to finish renovations, he secured an additional short-term loan.  Appellee subsequently informed Appellant of his having obtained the additional financing, promised to compensate Appellant for its work, and asked that Appellant resume renovations.  A billing dispute subsequently arose between the parties and, to date, Appellant has not been fully compensated for its services.  Appellant alleges that the attendant circumstances require a finding that Appellee never had the intent to keep good on his promises to pay and argues that he is thereby precluded from having the associated debt discharged in bankruptcy.  Appellant, however, has failed to demonstrate by factual evidence the existence of a genuine dispute as to whether Appellee created false pretenses or made a false representation with the intent to deceive Appellant at the time he made his promise.

Accordingly, **IT IS HEREBY ORDERED** that the Bankruptcy Judge's Order dated March 28, 2016 granting Appellee's motion for summary judgment (Adv. Docket, docs. 115, 116) is **AFFIRMED**.

**ORDER ENTERED** at Augusta, Georgia this 15th day of November, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA